## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CONSUMER PROGRAM ADMINISTRATORS, INC., an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH B. ZANGARA, a New Mexico citizen, ROBERT J. TABOR, a New Mexico citizen, and ZANGARA DODGE, INC., a New Mexico corporation<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

```
FILED: AUGUST 25, 2008
08CV4852
JUDGE CASTILLO
MAGISTRATE JUDGE COX
No.YM
```

## COMPLAINT

NOW COMES, CONSUMER PROGRAM ADMINISTRATORS, INC. ("CPA" or "Plaintiff"), an Illinois corporation,, by and through its attorneys, Freeborn & Peters LLP, and for its Complaint against Defendants KENNETH B. ZANGARA ("Zangara"), a New Mexico citizen, ROBERT J. TABOR ("Tabor"), a New Mexico citizen, and ZANGARA DODGE, INC. ("Zangara Dodge"), a New Mexico corporation, (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1.      This action arises from Defendants' defaults and material breaches of contractual terms contained in a Promissory Note, an Agreement To Do Business, and a Guarantee Agreement (collectively, the "Loan Agreements"), entered into by and between the parties.  Plaintiff seeks relief from this Court to enforce the terms of the Loan Agreements and recover the amounts due from Defendants.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff CPA is an Illinois corporation with its principal place of business located in Chicago, Illinois.

3.     Defendant Zangara is an individual and citizen of New Mexico.

4.     Defendant Tabor is an individual and citizen of New Mexico.

5.     Defendant Zangara Dodge is a New Mexico corporation with its principal place of business at 8528 Lomas Blvd., NE, Albuquerque, New Mexico, 87110.

6.     This Court has personal jurisdiction over Defendants, which have transacted business in this State, have entered into Loan Agreements and other relevant agreements with citizens of this State, and have purposely availed themselves of the benefits and the laws and commerce of this State.    Furthermore, pursuant to the Loan Agreements, Defendants have consented to this Court's personal jurisdiction.

7.     This Court has subject-matter jurisdiction to decide this case under 28 U.S.C. § 1332.  There is complete diversity between Plaintiff and Defendants, and the amount in dispute exceeds the value of $75,000.00.

8.     Venue is proper in this District under 28 U.S.C. § 1391(a).  A substantial part of the events or omissions giving rise to the claims herein occurred in this District; and Defendants are subject to personal jurisdiction in this District at the time this action is commenced.  Furthermore, pursuant to the Loan Agreements, Defendants consented to venue in this District.

## COUNT I – AGAINST DEFENDANTS ZANGARA AND TABOR

## BREACH OF CONTRACT – PROMISSORY NOTE

9.     On or around April 16, 2007, Defendants Zangara and Tabor executed and delivered to Plaintiff CPA a Promissory Note ("Note"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit A.   Pursuant to the Note, Defendants Zangara and Tabor (individually and collectively referred to therein as "Obligor") agreed, jointly and severally, to pay Plaintiff CPA (referred to therein as "Lender") the principal sum of $800,000.00 with interest thereon agreed to by the parties.

10.     Plaintiff CPA has complied with and performed all of its duties and obligations under the terms of the Note.

11.     Pursuant to the Note, Defendants Zangara and Tabor agreed to pay Plaintiff CPA certain amounts for certain agreements and contracts that Defendant Zangara Dodge, or any other automobile dealership owned or controlled by, or affiliated with, Defendants Zangara and Tabor (referred to therein as "Dealerships"), sold during the time the Note was outstanding until the Note was paid in full.

12.     Under the Note, if payments made pursuant to the above arrangement did not total a minimum amount during each calendar quarter, Defendants Zangara and Tabor were to pay Plaintiff CPA the difference between that fixed minimum and the amount actually received by Plaintiff CPA.

13.     The Note identified several events that constituted a default under the Note.   One such event was "the occurrence of a breach or default under the Agreement to Do Business [("ATDB")] between Obligor [Defendants Zangara and Tabor], Dealerships [Defendant Zangara

Dodge] and Lender [Plaintiff CPA] dated the same date herewith, the Pledge Agreement, or any other instrument or documents related thereto (collectively, the 'Loan Documents')."

14.    Plaintiff CPA learned that Defendants had breached and defaulted under the ATDB because Defendant Zangara Dodge stopped selling Plaintiff CPA's products and began selling another company's automobile or truck mechanical repair service agreements, etch contracts, guaranteed asset protection ("GAP") contracts, Assurance Edge contracts and credit insurance policies.

15.    As a result of the above, Defendants Zangara and Tabor are in default under the Note.

16.    Based on the default, on July 29, 2008, Plaintiff CPA notified Defendants Zangara and Tabor of their defaults, accelerated all indebtedness and demanded payment of all amounts due under the Note, an amount of approximately $191,712.60 as of July 31, 2008, with interest thereafter accruing at $31.88 per day until August 11, 2008. Thereafter, interest accrues at the default rate of 12% as specified in the Note. A true and correct copy of Plaintiff CPA's demand letter is attached hereto and incorporated as Exhibit B.

17.    Notwithstanding said demand, Defendants Zangara and Tabor have failed to make payment in full to satisfy the amounts due Plaintiff CPA under the Note.

18.    Pursuant to the terms of the Note, Plaintiff CPA is entitled to all costs including attorneys' fees incurred in connection with enforcing its rights under the Note.

19.    Pursuant to the terms of the Note, Defendants agreed that all matters related to the Note shall be litigated in courts having situs within the County of Cook, State of Illinois, including any federal court located therein.

WHEREFORE, CONSUMER PROGRAM ADMINISTRATORS, INC., respectfully requests that the Court enter judgment in its favor and against KENNETH B. ZANGARA AND ROBERT J. TABOR, in the amount of all principal and interest owed under the Note, including attorneys' fees, which far exceeds $75,000.00 exclusive of interest and costs, as well as any other and further relief as this Court deems just.

## COUNT II – AGAINST ALL DEFENDANTS

## BREACH OF CONTRACT – AGREEMENT TO DO BUSINESS

20.     Plaintiff re-alleges and incorporates by reference paragraphs 1-19 as if fully set forth herein.

21.     On or around April 16, 2007, Defendants, jointly and severally, executed and delivered to Plaintiff CPA an Agreement to Do Business ("ATDB"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit C.

22.     Pursuant to the ATDB, Defendants agreed that while any part of the afore-described Note remains outstanding, or May 1, 2012, whichever occurs last (referred to therein as the "Writing Period"), Defendants exclusively authorized Plaintiff CPA to place with an insurer(s) and/or administrator(s) of its choice, at least ninety percent (90%) of all acceptable automobile or truck mechanical repair service agreement business, 100% of all etch contracts, guaranteed asset protection ("GAP") contracts, Assurance Edge contracts and credit insurance policies ('F&I Products') written through Dealerships," including Defendant Zangara Dodge.

23.     Under the ATDB, Defendants also agreed, jointly and severally, to pay Plaintiff CPA certain amounts for each vehicle service contract, etch contract, GAP contract, Assurance Edge contract, and credit insurance premium sold by any Dealership (including Zangara Dodge) that was not placed through or serviced by Plaintiff CPA or its affiliates as required by the ATDB.

24.    The ATDB specifically defined and included the above amounts and requirements as "Obligations" under the Note described above.

25.    Plaintiff CPA learned that Defendant Zangara Dodge stopped selling Plaintiff CPA's products and began selling another company's automobile or truck mechanical repair service agreement business, etch contracts, GAP contracts, Assurance Edge contracts and credit insurance policies.

26.    As a result of the above, Defendants are in default under the ATDB.

27.    On or around July 29, 2008, Plaintiff CPA notified Defendants of their default. (Exh. B attached hereto.)  Plaintiff CPA estimated, based on Defendant Zangara Dodge's historical sales, the amount due for said default.  As of July 29, 2008, that amount was estimated to be $494,500.00 over the term of the ATDB.

28.    Plaintiff CPA has complied with and performed all of its duties and obligations under the terms of the ATDB.

29.    Plaintiff CPA demanded payment of all amounts due and to become due as a result of Defendants' breaches of the ATDB.  Notwithstanding said demand, Defendants have failed to make any payments to satisfy the amounts due to Plaintiff CPA under the ATDB.

30.    Pursuant to the terms of the ATDB and Note, Plaintiff CPA is entitled to all costs including attorneys' fees incurred in connection with enforcing its rights under the Note and ATDB.

31.    Pursuant to the terms of the ATDB, Defendants agreed that all matters related to the Agreement shall be governed by Illinois law and litigated in courts having situs within the County of Cook, State of Illinois, including any federal court located therein.

32.    Based on the foregoing, Defendants are in breach of their obligations under the ATDB and jointly and severally liable therefor.  Accordingly, Plaintiff CPA is entitled to recover all amounts due under said ATDB, including attorneys' fees and court costs incurred in connection with the enforcement of its rights under the terms of the ATDB.

WHEREFORE, CONSUMER PROGRAM ADMINISTRATORS, INC. respectfully requests that the Court enter judgment in its favor and against KENNETH B. ZANGARA, ROBERT J. TABOR, AND ZANGARA DODGE, INC. in the amount of at least $494,500.00, or an amount to be determined at trial, plus interest accruing at the rate agreed to by the parties under the terms of the ATDB and Note through the date of judgment, plus attorneys' fees and costs incurred in connection with the enforcement of Plaintiff CPA's rights under the terms of the ATDB and Note, as well as any other and further relief as this Court deems just.

## COUNT III – AGAINST DEFENDANT ZANGARA DODGE

## BREACH OF CONTRACT – GUARANTEE AGREEMENT

33.    Plaintiff CPA re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

34.    On or around April 16, 2007, Defendant Zangara Dodge ("Guarantor") executed and delivered to Plaintiff CPA a Guarantee Agreement ("Guarantee"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit D.  Under the Guarantee, Defendant Zangara Dodge jointly and severally, absolutely, irrevocably and unconditionally guaranteed to Plaintiff CPA the payment and performance by Defendants Zangara and Tabor (individually and collectively referred to therein as "Borrower") of all of their obligations under the Note.

35.    Plaintiff CPA has complied with and performed all of its duties and obligations under the terms of the Note, ATDB and Guarantee.

36.    Pursuant to the Guarantee, in the event of default, Defendant Zangara Dodge agreed to pay Plaintiff CPA the unpaid balance due to Plaintiff CPA under the Note within ten days from the date of demand from Plaintiff CPA.

37.    On July 29, 2008, Plaintiff CPA notified Defendants of the default under the Note by Defendants Zangara and Tabor.  Plaintiff CPA also made a demand upon Defendant Zangara Dodge for payment due under the Note.  (*See* Exh. B attached hereto.)

38.    Pursuant to the Guarantee, Defendant Zangara Dodge was required to pay Plaintiff CPA the unpaid balance due under the Note within ten days from the date of the demand from CPA.  As of the filing of this Complaint, however, Defendant Zangara Dodge has not made full payment of the amounts due under the Guarantee.

39.    Based on the foregoing, Defendant Zangara Dodge is in breach of its obligations under the Guarantee.  Therefore, Plaintiff CPA is entitled to recover all amounts due under said Guarantee, including attorneys' fees and costs incurred in connection with the enforcement of its rights under the terms of the Note and the Guarantee.

WHEREFORE, CONSUMER PROGRAM ADMINISTRATORS, INC., respectfully requests that the Court enter judgment in its favor and against DEFENDANT ZANGARA DODGE, INC., in the amount of all sums due and owing under the Note, plus attorneys' fees and costs, which far exceeds $75,000.00 exclusive of interest and costs, as well as any other and further relief as this Court deems just.

Respectfully submitted,

**CONSUMER PROGRAM ADMINISTRATORS, INC.,**
Plaintiff


BY: <u>/s/  Hillard M. Sterling</u>

Dated:   August 25, 2008

William N. Howard, Esq.
         Bar No. 6190114
Hillard M. Sterling, Esq.
         Bar No. 6232655
FREEBORN & PETERS LL[
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

08CV4852
JUDGE CASTILLO
MAGISTRATE JUDGE COX
YM

# EXHIBIT "A"

# PROMISSORY NOTE

$800,000.00                                          Date: April *16*, 2007

**FOR VALUE RECEIVED,** Kenneth B. Zangara and Robert J. Tabor, jointly and severally (individually and collectively referred to herein as "Obligor") agree to pay to the order of Consumer Program Administrators, Inc., an Illinois corporation (hereinafter called "Lender") the principal sum of EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($800,000.00) with interest from the date hereof on the principal balance outstanding from time to time until this indebtedness ("Note") is paid in full, computed on the basis of a 360-day year for the actual number of days elapsed, at a percentage rate per annum equal to the Prime Rate of interest plus 1%. "Prime Rate" shall mean the rate of interest publicly announced from time to time by J.P. Morgan Chase, N.A. (or any successor thereto) in Chicago, Illinois, as its "Prime Rate", without regard to whether such announced Prime Rate is the lowest rate of interest then offered by the Bank to its borrowers. Said principal, interest and any costs accrued hereunder, including any costs associated with the preparation or administration of this Note, shall be due and payable at the office of Lender, 175 West Jackson Blvd., Chicago, Illinois 60604, or at such other place as the Holder (the term "Holder" shall include Lender, its affiliates and any subsequent holder of this Note) may in writing designate.

Payments on this Note shall be made as follows:

(i) Obligor shall pay or cause to be paid $300 for each mechanical repair agreement, extended warranty or service contract which the Dealership listed on Schedule 1 and any other automobile dealerships owned or controlled by Obligor during the time this Note is outstanding ("Dealerships") sell after the date of this Note until this Note is paid in full. These payments shall be applied first to accrued but unpaid costs due under this Note, then to interest, then to principal. Obligor shall cause the Dealerships to enter into amendments to the Dealer Agreements between the Dealerships and Automotive Warranty Service, Inc. or its affiliates so that the fees referred to in the preceding sentence are paid directly to Lender. If payments made under this section do not total $78,000 during each calendar quarter beginning with the calendar quarter on July 1, 2007, Obligor shall pay within 10 days after Lender's demand to do so, the difference between $78,000 and the amount actually received by Lender attributable to that calendar quarter pursuant to the first sentence of this subparagraph (i).

(ii) If not paid sooner, all unpaid costs, principal and interest shall be due and payable on May 1, 2010.

All payments on this Note shall be credited to Obligor's account upon the receipt of good funds and shall be applied first to any costs or charges due Lender under this Note then to interest accrued, and then to principal. Interest on the principal balance remaining from time to time unpaid shall continue to accrue at the rate aforesaid until this Note is paid in full. Obligor may at any time pay the entire principal sum or any part thereof, together with any interest accrued, without penalty.

Obligor shall pledge to Lender as collateral for this loan shares of any insurance company reinsuring the service contracts described in subparagraph (i) above and shall enter into a Stock Pledge and Security Agreement ("Pledge Agreement") and any other documents requested by Lender to accomplish the pledge of such shares.

As further consideration for Lender's loan to Obligor, Obligor hereby unconditionally and irrevocably guarantees payment when due of any amounts owed to Lender or Lender's affiliates by the Dealerships or to any of their successors or assigns, without the necessity of Lender or its affiliates first bringing legal action against any Dealership or any other party. When used herein, "Obligation" means this Promissory Note, this guaranty and any other liabilities or obligations of Obligor to Lender or Lender's affiliates due or to become due, now existing or hereafter contracted, and however acquired by Lender or its affiliates. This Obligation shall survive Obligor's repayment of this Note.

The occurrence of any one of the following events shall constitute a default by Obligor under this Note:

(i)     any failure to pay any amount on this Note or any other Obligation when due or breach of any other terms or conditions herein; or

(ii)    if any application or statement in respect hereof furnished to Lender by Obligor shall be found to be materially false and Lender has notified Obligor of such default; or

(iii)   upon the occurrence of a breach or default under an Agreement To Do Business between Obligor, Dealerships and Lender dated the same date herewith, the Pledge Agreement or any other instrument or documents related thereto (collectively, the "Loan Documents"); or

(iv)    the insolvency (however expressed or indicated) or the filing of a petition in bankruptcy, reorganization or for the adjustment of debts, for, by or against the Obligor or any Dealership; or

(v)     any of the Dealerships ceases to do business, or is sold, merged or dissolved, or if the majority of the outstanding shares or ownership interests of any Dealership is transferred; or

(vi)    upon request by Lender, the failure of Obligor or any Dealership to provide any financial statement or other information to Lender.

Upon the occurrence of a demand for payment by Lender or of a default hereunder, (a) at the option of Lender, all unpaid amounts under this Note or under any other Obligations shall become immediately due and payable without demand, notice or legal process of any kind; (b) Lender may, at its option, without demand, notice or legal process of any kind, exercise any and all rights and remedies granted to it by this Note, the Pledge Agreement or by any other agreement now or hereafter existing between Lender and Obligor; and (c) Lender may at its option, exercise from time to time any other rights and remedies available to it under applicable law.

Any indebtedness from the Holder hereof or its affiliates to Obligor may be setoff, appropriated or otherwise applied to this Note or on any other Obligations, at any time, as well as after the maturity hereof. Obligor agrees that, to the extent permitted by law, this Note (including any usury limitations applicable hereto) shall be construed in accordance with the laws of the State of Illinois and shall be binding upon Obligor and its successors and assigns. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be severable, and be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note. Obligor represents and warrants that the proceeds of this loan are to be used solely for business purposes.

To induce Lender to accept this Note, Obligor irrevocably agrees that, subject to Lender's sole and absolute election, all actions or proceedings in any way, manner or respect, arising out of or from or related to this Note, shall be litigated in courts having situs within the County of Cook, State of Illinois. Obligor hereby consents and submits to the jurisdiction of any local, state or federal court located within said county and state. Obligor hereby waives any rights Obligor may have to transfer or change the venue of any litigation in accordance with this paragraph. OBLIGOR WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION HEREUNDER OR ARISING OUT OF LENDER'S TRANSACTIONS WITH OBLIGOR.

In the event of any default hereunder or after Lender has demanded payment in full, interest upon all outstanding indebtedness, whether under the Note or any Obligation, shall then be charged at a rate equal to twelve percent (12%) per annum, or at the highest rate permitted by applicable law, whichever is less, computed on the basis of a three hundred sixty (360) day year until all such indebtedness owing to Holder is paid in full. Obligor further agrees that it will pay to the Holder forthwith on demand therefore, all costs, including reasonable attorneys' fees, incurred in preparing, closing and enforcing this Note and related Loan Documents or the rights and remedies herein provided; and, together with any endorsers or guarantors, waives presentment, demand, notice of dishonor and protest, and consents to the release, with or without consideration, of any person or property liable for guaranteeing or securing this Note.

No provision of this Note shall require the payment or the collection of interest in excess of the maximum permitted by applicable law. If any excess of interest in such respect is hereby provided for, or shall be adjudicated to be so provided, in connection with this Note, the provisions of this paragraph shall govern or prevail and neither Obligor nor his heirs, successors,

or assigns shall be obligated to pay the excess amount of such interest or any other excess sum paid for the use, forbearance, or detention or sums loaned pursuant hereto. In the event Lender ever receives, collects, or applies as interest any such sum, such amount which would be in excess of the maximum amount permitted by applicable law shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note; and, if the principal of this Note has been paid in full, any remaining excess shall forthwith be paid to Obligor. In determining whether or not the interest paid or payable exceeds the maximum rate permitted by applicable law, Obligor and Lender shall, to the extent permitted by applicable law, (a) characterize any non-principal payment as an expense, fee, or premium rather than as interest, (b) exclude voluntary prepayments and the effects thereof, and (c) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the indebtedness evidenced by this Note so that interest for the entire term does not exceed the maximum rate permitted by applicable law.

The Obligor agrees to keep all of the promises made in this Note.

THIS NOTE AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS LOAN.

OBLIGOR:


_____
Kenneth B. Zangara


_____
Robert J. Tabor

# EXHIBIT "B"

## NOTICE OF DEFAULT

**By Federal Express and Certified Mail**

### July 29, 2008

Mr. Kenneth B. Zangara     Mr. Robert J. Tabor      Zangara Dodge, Inc.
8501 Snakedance Court NE   10501 Royal Troon       8528 Lomas Blvd. NE
Albuquerque NM 87110       Albuquerque NM 87111    Albuquerque NM 87110
                                                   Attention: President

Gentlemen:

Consumer Program Administrators, Inc. ("Lender") hereby declares a default under a Promissory Note ("Note") dated April 16, 2007 made by Kenneth B. Zangara and Robert J. Tabor ("Borrowers"). The event of default is the breach of the Agreement To Do Business ("ATDB") dated April 16, 2007 between Borrowers, Zangara Dodge, Inc. ("Zangara Dodge") and Resource Dealer Group, Inc. ("RDG").

Lender hereby demands payment in full of the Note on or before August 11, 2008. The payoff balance is $191,712.60 as of July 31, 2008. After that date, interest accrues at $31.88 per day. If payment in full is not made on or before August 11, 2008, interest will accrue at the default rate of interest of 12% as specified in the Note. Send the payoff check to Scott McWhinnie, Consumer Program Administrators, Inc. C/o The Warranty Group, 175 West Jackson Blvd. Chicago IL 60604. If you want to wire the payoff amount, the wiring instructions are:

> Beneficiary Name: Consumer Program Administrators
> Beneficiary Account: 5238250
> Bank ABA: 071000013
> Bank: JP Morgan Chase

RDG hereby notifies each of you that you have breached the ATDB by not placing through RDG 90% of all service contracts and 100% of all GAP contracts, etch, Assurance edge and all credit insurance sold by Zangara Dodge as required by the ATDB. The term of the ATDB is until May 1, 2012 or until the Note is paid off, whichever occurs last. Under the ATDB, you owe RDG $100 for each service contract, $50 for each GAP contract, $20 for each etch contract, $50 for each Assurance edge contract and $75 for each $1000 of credit insurance premium sold by Zangara Dodge in violation of the ATDB. RDG will begin billing you for these amounts starting in

September 2008. Based on past sales, we estimate that the dealership will owe $494,500 over the term of the ATDB. Each Borrower and Zangara Dodge are jointly and severally liable for all amounts due under the ATDB and demand is hereby made on each of them for payment of all amounts due and to become due under the ATDB.

Under the Guarantee Agreement dated April 16, 2007 ("Guarantee") Zangara Dodge guaranteed payments of all amounts owing under the Note. Lender hereby demands that Zangara Dodge pay any outstanding amounts under the Note on August 22, 2008 if the Note has not been paid in full prior to that date.

Zangara Dodge entered into a Security Agreement ("Security Agreement") dated April 16, 2007 with Lender. Under the Pledge Agreement, Zangara Dodge granted a security interest in certain assets of the dealership, including all motor vehicles, parts, shop equipment, accounts receivable and other assets to secure its obligations under the Guarantee. Lender hereby declares a default under the Security Agreement.

The Note, ATDB, Guarantee, Security Agreement and any related agreements are referred to herein as "Loan Documents." Lender may, in its sole discretion, commence collection proceedings and otherwise take action to enforce the terms of the Loan Documents and related agreements. Lender does not waive any default that has occurred or may occur with the passage of time under the Loan Documents. This notice is without prejudice to Lender's rights and remedies under the Loan Documents and applicable law. Lender reserves its right to exercise its remedies under the Loan Documents and applicable law at any time without further notice to Borrowers, Zangara Dodge or any other person or entity. Any discussions between Lender, RDG, Borrowers or Zangara Dodge regarding the administration or disposition of the Loan Documents shall not constitute any rescission of this notice or any waiver or forbearance of the exercise of its rights and remedies under the Loan Documents and applicable law. Lender's receipt and application of one or more payments in an amount less than the amounts set forth above shall not serve to reinstate the Note but may be applied by Lender as a partial payment of amounts owed. Lender intends to bring legal action if all amounts are not paid as described above.


CONSUMER PROGRAM                          RESOURCE DEALER
ADMINISTRATORS, INC                       GROUP, INC.

By: _John G. England_                     By: _John G. England_

_JOHN E. ENGLAND_  _V.P._                 _JOHN E. ENGLAND_  _E.V.P._
Name            Title                     Name            Title

# EXHIBIT "C"

## AGREEMENT TO DO BUSINESS

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kenneth B. Zangara and Robert J. Tabor, jointly and severally (individually and collectively referred to herein as "Dealer") hereby agrees with Consumer Program Administrators, Inc., an Illinois corporation, with principal offices at 175 West Jackson Blvd., Chicago, Illinois 60604 (hereinafter referred to as "Lender") that, while any part of that certain promissory note ("Promissory Note") made concurrently herewith in the original principal amount of EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($800,000.00) from Dealer to Lender remains outstanding or May 1, 2012, whichever occurs last (that time period is referred to herein as the "Writing Period"), Dealer and each Dealership hereby exclusively authorize Lender or its affiliates to place with an insurer(s), provider(s) and/or administrator(s) of its choice, at least ninety percent (90%) of all acceptable automobile or truck mechanical repair service agreement business and 100% of all etch contracts, guaranteed asset protection (GAP) contracts, Assurance Edge contracts and credit insurance policies ("F&I Products") written through Dealerships. Dealer and each Dealership hereby agree that the form, rates, conditions, sale and placement of the F&I Products shall be subject to and in accordance with the customary forms, rates, procedures and agreements of the insurer(s), provider(s) and/or administrators provided by Lender or its affiliates, as well as applicable laws and regulations from time to time in effect with respect to such agreements. When used herein, Dealership means the Dealership signing below and any other Dealership which during the Writing Period are owned or controlled by Dealer. Dealer shall cause any Dealerships acquired or controlled directly or indirectly by Dealer after the date hereof and during the Writing Period to enter into an agreement to do business substantially similar to this Agreement. In the event that Dealer sells or otherwise assigns or transfers (including by way of merger) more than 50% of the outstanding stock or assets of any Dealership, Dealer shall cause the acquiror(s), assignee(s) or transferee(s) of such stock or assets to assume the obligations of Dealership under this Agreement.

Dealer and Dealership, jointly and severally, agree to pay to Lender $100 for each vehicle service contract, $20 for each etch contract, $50 for each GAP contract, $50 for each Assurance Edge contract, and $75 per $1,000 of credit insurance premium sold by any Dealership which has not been placed through or serviced by Lender or its affiliates as required by this Agreement. Dealer and Dealership shall pay this amount upon demand by Lender. Dealer and Dealership hereby authorize and direct Lender or any of its affiliated companies to charge any amounts owing to Lender under this Agreement as an expense against any services which Lender or any of its affiliated companies provide to any reinsurance or similar company in which any of the Dealers or Dealerships now or in the future own shares. Such expense shall be paid to Lender or as Lender may direct. Lender and its affiliates may offset and deduct any amounts which any Dealer or Dealership owes to Lender under this Agreement from any amounts owed by Lender or any of its affiliates to any of the Dealers or Dealerships, whether under this or any other agreement. Any amounts owing by Dealer or Dealerships hereunder shall be included as

1

an "Obligation" as defined in the Promissory Note, and at the sole discretion of Consumer Program Administrators, Inc. those amounts may be added to the balance due under the Promissory Note.

To induce Lender to enter into this Agreement, Dealer and Dealership irrevocably agree that, subject to Lender's sole and absolute election, all actions or proceedings in any way, manner or respect, arising out of, from or related to this Agreement, to the extent allowed by law, shall be governed by Illinois law and shall be litigated in courts having situs within the County of Cook, State of Illinois. Dealership and Dealer hereby consents and submits to the jurisdiction of any local, state or federal court located within said county and state. Dealer and Dealership hereby waive any rights it may have to transfer or change the venue of any litigation in accordance with this paragraph. DEALER AND DEALERSHIP WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION HEREUNDER OR ARISING OUT OF THE TRANSACTIONS DESCRIBED IN THIS AGREEMENT OR ANY RELATED AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement to be effective as of this _16_ day of April, 2007.

DEALERS:                          CONSUMER PROGRAM
                                  ADMINISTRATORS, INC.

                                  By: _____

KENNETH B. ZANGARA                MARK MISHLER, PRESIDENT/CFO
                                  _____        _____
                                      Name              Title

ROBERT J. TABOR

ZANGARA DODGE, INC.

By: _____
Robert Tabor          G.M./V-P.
_____        _____
   Name              Title

# EXHIBIT "D"

## GUARANTEE AGREEMENT

This Guarantee Agreement ("Agreement") is made as of the _16_ day of April, 2007 by and between Consumer Program Administrators, Inc. ("Lender") and the undersigned ("Guarantor").

## PREAMBLES

**WHEREAS,** Lender intends to loan $800,000.00 (the "Loan") to Kenneth B. Zangara and Robert J. Tabor, (individually and collectively referred to herein as "Borrower") pursuant to a Promissory Note ("Note") dated the date hereof; and

**WHEREAS,** Borrower owns all of the outstanding shares of Guarantor; and

**WHEREAS,** Guarantor wishes Lender to make the Loan to Borrower; and

**WHEREAS,** Guarantor acknowledges that Lender will not provide the Loan to Borrower unless Guarantor enters into this Agreement.

**NOW THEREFORE,** in consideration of Lender making the Loan to Borrower, and for other good and valuable consideration including the mutual promises exchanged herein, the receipt of which the parties acknowledge, the parties agree as follows.

1. Guarantee.

   Guarantor jointly and severally, absolutely, irrevocably and unconditionally guarantees to Lender the payment and performance by Borrower when due of all of his obligations under the Note. Upon default by Borrower under the Note, Guarantor shall pay to Lender the unpaid balance due to Lender under the Note within ten (10) days from the date of demand from Lender.

   Guarantor agrees that Lender shall have whatever recourse and remedies are available to it by the terms of the Note, this Agreement, the Security Agreement between Lender and Guarantor, any other agreement between Borrower and Lender, and under applicable law. Guarantor hereby waives any right to assert against Lender any defense (legal or equitable), set-off, counterclaim, and/or claim which Guarantor may now or at any time hereafter have against Borrower and/or any other party liable to Lender in any way or manner.

2. Warranties and Representations.

   Guarantor warrants and represents to Lender that this Agreement is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its

1

terms, that this Agreement has been duly and validly authorized by the Guarantor and does not violate any law or regulation or agreement to which Guarantor is a party.

3. General.

    A.    Guarantor expressly waives and dispenses with notice, demand, presentment, any demand for performance or payment upon Borrower or any third party, and any notice to the Guarantor of the acceptance of this guaranty or of nonpayment or nonperformance on the part of Borrower, and Lender shall not be required to bring any legal action against the Borrower or any third party. Guarantor shall also pay all legal or other costs and expenses of or for collection of any payments provided for in the Note or under this Guarantee Agreement. Lender may grant any extension of time or indulgence to the Borrower for the payment of any sum(s) due or to become due from Borrower or take any note or other obligation or any security for the payment of any sum(s) due or to become due from Borrower without notice to the Guarantor and without in any way releasing or affecting the liability of the Guarantor.

    B.    Guarantor shall indemnify and hold Lender harmless from all loss, cost, damage or expense, including attorney's fees, incurred by Lender and arising out of or related to Guarantor's breach of this Guarantee Agreement, or arising out of or relating to Borrower's breach of the Note or any other agreement between Borrower or Lender or Borrower's violation of any law or regulation.

    C.    This Agreement sets forth the sole and entire understanding of the parties with regard to the subject matter hereof. The failure of any party promptly to assert or enforce its rights hereunder shall not constitute a waiver of such rights. This Agreement may not be amended or assigned by Guarantor except with the prior written consent of Lender. In the event that any provision of this Agreement is adjudicated to be invalid or unenforceable, such invalidity or unenforceability shall not impair any other provision of this Agreement and the parties shall make their best efforts to agree to a valid and enforceable provision similar in purpose and effect to such invalid or unenforceable provision. This Agreement shall be governed by the law of the State of Illinois. This Guarantee Agreement shall inure to the benefit of, and be enforceable by, any successors or assigns of Lender.

2

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first indicated above.

ZANGARA DODGE, INC.

By: _____

_____
Name            Title

Kennerth B. Zangara, President

ACCEPTED BY:

CONSUMER PROGRAM ADMINISTRATORS, INC.

By: _____

MARK MISHLER, PRESIDENT/CFO
Name            Title

3

Zangara Guarantee Agreement 4.13.07.doc

## AMENDMENT AND ASSIGNMENT

This Amendment and Assignment is made and entered into as of April 16, 2007 by and among the parties signing below.

**WHEREAS**, the undersigned automobile dealership ("Dealership") is owned or controlled by Kenneth B. Zangara and Robert J. Tabor ("Obligor"); and

**WHEREAS**, Consumer Program Administrators, Inc. ("Lender") has loaned $800,000.00 to Obligor pursuant to a Promissory Note dated the date hereof; and

**WHEREAS**, Dealership has entered into one or more Administrative Agreements or Dealer Agreements with Automotive Warranty Services, Inc. or its affiliates as amended by one or more "Amendment Agreements" (as amended, "Dealer Agreements").

**NOW THEREFORE**, for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. <u>Assignment</u>. Pursuant to the Dealer Agreements, Dealership hereby assigns all of its rights to receive any Administrative Fee or other similar fee described in the Dealer Agreements or any amendments thereto to Lender. Obligor assigns all of his rights to receive any such fees to Lender.

2. <u>Termination</u>. Notwithstanding anything to the contrary in any Dealer Agreement, this assignment is irrevocable until the Promissory Note is paid in full.

3. <u>No Recourse to Lender</u>. Notwithstanding anything to the contrary in any Dealer Agreement, Lender shall not be liable for payment of any Gross Refund Amounts or any other amounts under the Dealer Agreements.

4. <u>Further Cooperation</u>. If requested by Lender, each Dealership and each Obligor agrees to take such other action and sign any documents and, Lender is authorized to file UCC-1 financing statements, which Lender may reasonably deem necessary or desirable to carry out the intent of this Agreement.

IN WITNESS WHEROF, the parties hereto have caused this Agreement to be signed by their duly authorized officers as of April 16 , 2007.

AUTOMOTIVE WARRANTY
SERVICES, INC.

By: _____

MARK MISHLER, PRESIDENT/CFO
Name _____ Title

ZANGARA DODGE, INC.

By: _____

Kenneth B Zangara, President
Name _____ Title

ACKNOWLEDGED AND AGREED:

_____          _____
Kenneth B. Zangara                Robert J. Tabor

Apr 17 07 09:52a     Sean Griffin         505-268-7795       p.1

April _17_, 2007

Consumer Program Administrators, Inc.
175 West Jackson Blvd.
Chicago, IL 60604

Gentlemen/Ladies:

     Please transfer $800,000.00 pursuant to a Promissory Note dated the date hereof as follows:

Bank Name: First Community Bank

Bank Address: 111 lomas Ave

Bank City/State/ZIP: Albuquerque New Mexico, 87104

Bank main phone: (505) 241-7545

Attn: Brent Spendlove

ABA # 107001452

Acct. # 1767216

Acct. Name: Zangara Dodge, Inc

Reference:

Contact Person: Brent Spendlove

Contact Person Telephone (505) 241-7545

         Very truly yours,

         _____
         Kenneth B. Zangara

         _____
         Robert J. Tabor

PAGE 01/01                   V           97357571521    16:53    04/17/2007

## CERTIFICATE OF SECRETARY OF
## ZANGARA DODGE, INC.

I, ~Richard K Lee~, am the duly elected, acting, and authorized Secretary of Zangara Dodge, Inc. ("Dealership"). I certify that the following resolutions were adopted and approved by the Board of Directors of the Dealership.

"WHEREAS, Consumer Program Administrators, Inc. ("Lender") intends to lend $800,000.00 (the "Loan") to Kenneth B. Zangara and Robert J. Tabor, the owners of this company; and

"WHEREAS, this company has guaranteed repayment of the Loan to Lender, pledged its assets and assigned certain fees to Lender to repay the Loan.

"BE IT RESOLVED, that entering into a Guarantee Agreement with Lender pursuant to which this company guarantees repayment of the Loan be and it is hereby approved in all respects; and

"FURTHER RESOLVED, that entering into a Security Agreement with Lender pursuant to which this Company grants a security interest in its assets to secure the repayment of the Loan, its performance under the Guarantee Agreement and certain other obligations to Lender or its affiliates be and it is hereby approved in all respects.

"FURTHER RESOLVED, that the assignment by this company of certain fees to Lender pursuant to one or more Dealer Agreements and an Amendment and Assignment Agreement to repay the Loan be and it is hereby approved in all respects."

IN WITNESS WHEREOF, I have signed this certificate as of this 14 day of April, 2007.

Secretary's Name: _____

Agreed:

STOCKHOLDERS

_____
Kenneth B. Zangara

_____
Robert J. Tabor

Zangara Certificate of Secretary 4.13.07.doc

| Form **W-9** (Rev. January 2003) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | **Give form to the requester. Do not send to the IRS.** |
|---|---|---|

Name  *Kay Zangana*

Business name, if different from above

Check appropriate box: ☒ Individual/ Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ _____

☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)  *8501 Snakedance CT*

Requester's name and address (optional)

City, state, and ZIP code  *Albuquerque, New Mexico 87111*

List account number(s) here (optional)

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How to get a TIN** on page 3.

**Note:** *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

Social security number  5 8 5 5 0 0 8 1 4

or

Employer identification number

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here  X _(signature)_

**Purpose of Form**

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Cat. No. 10231X  Form **W-9** (Rev. 1-2003)

Form **W-9**
(Rev. January 2003)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

**Give form to the
requester. Do not
send to the IRS.**

Name
Robert J Taban

Business name, if different from above
Zangona Lodge.

Check appropriate box: ☒ Individual/
Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ............................

☐ Exempt from backup
withholding

Address (number, street, and apt. or suite no.)
10501 Royal Tram NE

Requester's name and address (optional)

City, state, and ZIP code
Albuquerque N.M 87111

List account number(s) here (optional)

**Part I    Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN).
However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on
page 3. For other entities, it is your employer identification number (EIN). If you do not have a number,
see **How to get a TIN** on page 3.

**Note:** If the account is in more than one name, see the chart on page 4 for guidelines on whose number
to enter.

Social security number
5 3 6 7 2 4 0 3 5

or

Employer identification number

**Part II    Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal
Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has
notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup
withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply.
For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement
arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must
provide your correct TIN. (See the instructions on page 4.)

Sign
Here

Signature of
U.S. person ▶ Robert J Taban

Date ▶ 4/16/07

**Purpose of Form**

A person who is required to file an information return with
the IRS, must obtain your correct taxpayer identification
number (TIN) to report, for example, income paid to you, real
estate transactions, mortgage interest you paid, acquisition
or abandonment of secured property, cancellation of debt, or
contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person
(including a resident alien), to provide your correct TIN to the
person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are
waiting for a number to be issued),

2. Certify that you are not subject to backup withholding,
or

3. Claim exemption from backup withholding if you are a
U.S. exempt payee.

**Note:** If a requester gives you a form other than Form W-9
to request your TIN, you must use the requester's form if it is
substantially similar to this Form W-9.

**Foreign person.** If you are a foreign person, use the
appropriate Form W-8 (see Pub. 515, Withholding of Tax on
Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.**
Generally, only a nonresident alien individual may use the
terms of a tax treaty to reduce or eliminate U.S. tax on
certain types of income. However, most tax treaties contain a
provision known as a "saving clause." Exceptions specified
in the saving clause may permit an exemption from tax to
continue for certain types of income even after the recipient
has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an
exception contained in the saving clause of a tax treaty to
claim an exemption from U.S. tax on certain types of income,
you must attach a statement that specifies the following five
items.

1. The treaty country. Generally, this must be the same
treaty under which you claimed exemption from tax as a
nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that
contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the
exemption from tax.

5. Sufficient facts to justify the exemption from tax under
the terms of the treaty article.

Cat. No. 10231X

Form **W-9** (Rev. 1-2003)